Keller Mines, Inc., et al. [1] v. Commissioner. Keller Mines, Inc. v. Commissioner
Docket Nos. 85920-85924.
United States Tax Court
T.C. Memo 1962-31; 1962 Tax Ct. Memo LEXIS 276; 21 T.C.M. (CCH) 142; T.C.M. (RIA) 62031; February 15, 1962
James A. Scott, Esq., for the petitioners. William C. Kollas, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in the petitioners' income taxes for 1957 as follows: Docket
Income Tax
Number
Deficiency
85920
$10,085.28
85921
3,019.24
85922
3,057.38
85923
295.02
85924
795.33 The petitioners in dockets numbered 85923 and 85924 seek overpayments of $10.85 and $11.82, respectively. The controlling issue is the extent beyond 30 cents a ton of coal, to which the petitioner corporation is entitled to deduct, as an ordinary and necessary business expense, a royalty of 50 cents a ton of coal, paid by it to a closely related partnership. Findings of Fact The stipulated facts are hereby *277 found. Keller Mines, Inc. is an Ohio corporation engaged in the business of strip mining coal. It is on an accrual, fiscal year ending October 31, method of reporting income. Petitioner John Oreskovich and his now deceased wife Margaret, the latter being here represented by her Estate, lived in Atwater, Ohio in 1957. Petitioners Alfred J. and Evelyn Silbiger, husband and wife, also lived in Atwater, Ohio in 1957, as did petitioners Alexander and Pauline Rach, husband and wife. Petitioners Edwin W. and Elisabeth H. Jones, husband and wife, lived in Ravenna, Ohio. All of the petitioners filed their respective income tax returns with the district director of internal revenue at Cleveland, Ohio, the husbands and wives filing jointly. During the periods here material, a partnership known as the Atwater Company was owned and controlled, in the same proportionate interests, by the same men who owned and controlled Keller Mines, Inc. The partnership operated a hauling company and it owned several farms. John Oreskovich was the managing partner. Oreskovich and Silbiger, another one of the partners, on October 4, 1955, entered into an option-lease agreement with Richard, Lois, David and *278 Ruth Myers, the fee owners of a 330-acre tract of land in Mahoning County, Ohio. This agreement granted a 180-day option to purchase all the profitable and strippable coal underlying the tract for a royalty of 30 cents per ton for all coal sold over the scales, and also a similar option to purchase all limestone and clay for a royalty of 12 cents per ton for each ton sold over the scales. On the acceptance of the option-lease and until mining operation began, an advance royalty of one dollar per acre, per year was to be paid to the lessors. Oreskovich and Silbiger, by instrument dated October 10, 1955, assigned all of their rights to mine the coal contained in the option-lease agreement of October 4, 1955, to Atwater Company, the partnership. Atwater Company, through Oreskovich, entered into an agreement on October 11, 1955, whereby it assigned to Keller Mines, Inc. all of the coal underlying the Myers tract, covered in the October 4, 1955 optionlease agreement for the payment to Atwater of 50 cents per ton of the coal mined and sold by Keller Mines, Inc. Test drilling on the tract took place after October 4, 1955 and before March 29, 1956, when the Myerses were notified that *279 the option would be exercised. At the latter time Atwater paid the Myerses an advance royalty of $330 as provided by the October 4, 1955 agreement. The test drilling showed that the Myerses' property was one of the best coal properties in Mahoning County. Keller Mines, Inc. began strip mining coal from the Myerses' property during the last part of its fiscal year ending October 31, 1956. During the next fiscal year it extracted and sold from the Myerses' property 11,976.26 tons of coal and paid Atwater the agreed royalty of $5,988.13. For the same coal Atwater in turn paid the Myerses $3,592.88, as agreed. Atwater Company, by similar transactions, obtained a 90-day option for the right to mine and sell coal for a 30 cents per ton royalty on all coal sold, from a 100-acre Brodzinski tract, adjacent to the Myerses' property, and assigned it within the option period to Keller Mines, Inc. for a royalty of 50 cents per ton of coal sold. Prior to the expiration of the option, and on October 29, 1956, Atwater exercised the option and paid an agreed advanced royalty of $100. A small quantity of the coal seam extended from the Myerses' property into the adjoining Brodzinski property. The *280 acquisition of the Brodzinski lease afforded Keller Mines advantages in its working of the Myers tract. A total of 2,539.8 tons of coal was mined from the Brodzinski property which called for a royalty of $761.94 to Brodzinski at 30 cents per ton. No further coal will be mined from the property, but Atwater paid the Brodzinskis total royalties of $1,000 as agreed. Keller Mines, Inc. paid Atwater $1,269.90, at the 50 cents per ton royalty rate, for the Brodzinski coal. Prior to 1955 tax counsel advised the parties that the coal strip mining business should be conducted by the partnership instead of the corporation; that new leases should be acquired by the partnership; and that Keller Mines, Inc. should liquidate after completing the mining of their present properties. One of the reasons was to save overall taxes by the partnership taking depletion and eliminating the double tax incidence on corporate earnings and distributions. Internal differences and distrust among the partners caused them to have Keller Mines, Inc. mine the leases in question. The partnership in the meantime had acquired the Myers and Brodzinski leases. The difference of $22,820.79 between the royalties received *281 by Atwater from Keller Mines, Inc. and paid by Atwater to the Myerses and Brodzinskis was reflected in Atwater's partnership return for its fiscal year ended October 31, 1957 as capital gain under the provisions of section 631 of the Internal Revenue Code of 1954. The partners reflected their proportionate shares thereof in their individual joint income tax returns for the taxable year 1957. In the deficiency notices for the individual petitioners the Commissioner held that they were not entitled to the use of section 631 and accordingly capital gains treatment was being denied and their distributive shares were treated as dividends. In its corporation return of income for the taxable fiscal year 1957 Keller Mines, Inc. deducted as an expense royalties in the amount of $52,213.47 with respect to amounts accrued under the sublease agreements with Atwater relative to the Myers and Brodzinski properties. In his notice of deficiency with respect to Keller Mines, Inc., the Commissioner disallowed as an expense the portion that exceeded the 30 cents per ton royalties paid to the Myerses and Brodzinskis by Atwater during its fiscal year 1957. The Commissioner also *282 allowed an additional deduction for depletion because of the above adjustment. A fair and reasonable royalty for the mining of coal under the agreements with the Myerses and Brodzinskis, negotiated between parties not subject to scrutiny by reason of the relation between them, is 50 cents per ton of coal mined and sold. Opinion Our finding of fact that a fair and reasonable royalty payment between unrelated parties would be 50 cents per ton of coal sold under option and lease transactions such as existed here is dispositive of all the issues presented, including the application of section 631 of the 1954 Code, as the Commissioner concedes. This conclusion is based upon the opinion of well qualified experts in this field, with broad experience in this type of mining, one of whom was a competitor. The opinions were fortified by testimony as to comparable or higher royalty payments made between unrelated parties in comparable situations on comparable or less desirable strip mining coal property; and by computations establishing the reasonable amount of the royalty commensurate with a reasonable profit on the mining operation. It would serve no useful purpose to elaborate upon the *283 details of this testimony. Suffice it to say that it was convincing. See Differential Steel Car Co., 16 T.C. 413. The Commissioner strongly urges that the 30 cent royalty provided in the agreement between the partnership and the owners of the fees establishes the fair and reasonable amount and the overriding royalty which Keller Mines, Inc. was to pay could not be justified. The Commissioner does not deny the entity of the partnership and of the corporation. They were valid and separate taxable enterprises. The best that the Commissioner can do is to require that because of the identity between the partnership members and the corporation shareholders these transactions should be judged only after careful scrutiny. This we have done and having done so, conclude that the 50 cent royalty is fair and reasonable and will support a deduction, based upon that amount, for ordinary and necessary business expenses. The relationship between the corporation and the partnership will not cause us to deny that one such taxpayer might be able to make a bargain purchase. This good fortune cannot control the question of whether the price at which the same property is subsequently sold *284 is the fair market value. The standard of an arm's length transaction is the governing test. The 50 cents per ton rate for the Brodzinski royalty which covered property adjoining the Myers property, is also justified in part by the fact that it was contiguous property and afforded Keller Mines, Inc. geographical advantages of water diversion and an area to pile dirt being moved for the strip mining of the Myers property. The Commissioner also suggests that the transactions were formulated only for the purpose of obtaining the capital gains treatment under section 631 of the Internal Revenue Code of 1954, for net losses obtained by the partnership, and the right to the deduction of all the royalties as an expense by Keller Mines, Inc. As the facts indicate, tax counsel for the parties had recommended that the partnership take over the entire strip mining operation and that Keller Mines, Inc. complete its existing work and liquidate. This was to eliminate the double tax on corporate earnings and distributions and to give the partnership the right to the depletion deduction. The petitioners point out on brief that had this been done, tax savings would be greater *285 than would result on the conclusion of the issue at bar in their favor. The parties did not pursue their counsel's recommendations because it was felt that one of the partners, who could prove himself difficult, might require the liquidation of the partnership. Rather than chance this, they proceeded through the present arrangement. The option leasing arrangement for the partnership in question had been obtained by those acting for the partnership prior to the abandonment of the plan proposed by the petitioners' counsel. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Estate of Margaret Oreskovich, Deceased, John Oreskovich, Executor, and John Oreskovich, Surviving Spouse, Docket No. 85921; Alfred J. Silbiger and Evelyn Silbiger, Docket No. 85922; Alexander Rach and Pauline Rach, Docket No. 85923; Edwin W. Jones and Elisabeth H. Jones, Docket No. 85924.↩